IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| JILL M. McNERTNEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 6:10-cv-03149-NKL |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Pending before the Court is Plaintiff Jill McNertney's ("McNertney") Social Security Complaint [Doc. # 3]. McNertney seeks judicial review of the Social Security Commissioner's ("Commissioner") denial of her request for disability insurance benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401, *et seq.*, §§ 1381, *et seq.* The Administrative Law Judge ("ALJ") found that McNertney was not entitled to benefits and such determination became the final decision of the Commissioner when the Appeals Council of the Social Security Administration ("Appeals Council") denied McNertney's request for review. McNertney has exhausted her administrative remedies, and jurisdiction is conferred on this Court pursuant to 42 U.S.C. § 405(g). For the following reasons the Court reverses and remands for the ALJ to reconsider McNertney's RFC after taking into account limitations caused by all of McNertney's impairments.

I. **Background**

## A. Factual and Procedural History[1]

McNertney, who has a high school education, has most recently been employed as a housekeeping cleaner and a short order cook. [Tr. 50; 141]. McNertney filed an application for disability insurance benefits on November 27, 2006, claiming she became disabled on October 15, 2006 [Tr. 35, 90, 93], due to "Post tramatic stress disorder [sic], schizo affective, hepatitis c, bi-polar, anxiety, liver disease, drepression [sic], arthritis, pancretitus [sic], gall stones." [Tr. 152]. On July 17, 2009, following an evidentiary hearing, the ALJ issued a written decision finding that McNertney was not disabled from February 25, 2006 through the date of the decision. [Tr. 26]. After the Appeals Council denied McNertney's request for additional administrative review of the ALJ's decision, McNertney sought review by the Court.

McNertney, age 41 as of the date of the hearing, is about 5' 1" tall and weighs 133 pounds. [Tr. 36]. McNertney testified that she suffers from several different problems, including back problems. Her doctors informed her that she has scoliosis, degenerative disc disease, and arthritis. She testified that she has pain in her neck and lower back, with pain ranging between five and eight on a scale of zero through ten. Sometimes the pain would extend down her right arm to her elbow. According to McNertney, she takes pain medication such as Tramadol, Flexeril, and ibuprofen, as well as frequent hot showers to reduce the pain.

---

[1] The complete facts and arguments are presented in the parties' briefs and will be duplicated here only to the extent necessary. Portions of the parties' briefs are adopted without quotation designated.

McNertney also testified that she has been diagnosed with schizoaffective disorder, post traumatic stress disorder, anxiety, and borderline personality disorder. She received treatment for depression.

Medical records reflect that Floyd Simpson, D.O., treated McNertney for schizoaffective disorder and borderline personality disorder from January 13, 2005 to October 19, 2006. At the hearing, the vocational expert testified that the limitations included in Dr. Simpson's medical source statement for McNertney [Tr. 414-417] would "preclude any competitive employment." [Tr. 54]. Dr. Simpson had listed that McNertney was "moderately limited" in the following categories:

- ability to maintain attention and concentration for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure);
- ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;
- ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- ability to interact appropriately with the general public;
- ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; and
- ability to respond appropriately to changes in the work setting.

[Tr. 415-417]. "Moderately limited" was defined as: "[a]n impairment which seriously interferes with, and in combination with one or more other restrictions assessed, will preclude the individual's ability to perform the designated activity on a regular and sustained basis, *i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule." [Tr. 414].

3

Sharol McGehee, Psy. D., performed psychological evaluations of McNertney on July 6, 2007 and February 3, 2009. Dr. McGehee concluded in 2007: "Test results are consistent with Dr. Simpson's diagnoses of Schizoaffective Disorder. Jill does not appear to be malingering, even though test results suggested that negative impression management was a possibility. With the diagnoses that she has, this type of test score would be considered appropriate." [Tr. 381]. In 2009, Dr. McGehee administered the Million Clinical Multiaxial Inventory-Third Edition (MCMI-III) when evaluating McNertney. Dr. McGehee stated that "[t]he MCMI III was corrected for the sake of validity," and concluded:

> Test results are also consistent with Posttraumatic Stress Disorder. Jill has a depressive personality style with significant depressive features. She meets the criteria for both schizoid and paranoid personality disorders. Her clinical profile is significant for posttraumatic stress disorder and bipolar disorder with a significant amount of anxiety and depression. She is currently experiencing a severe thought disorder and has poor contact with reality. She remains a high risk for suicidal ideation.

[Tr. 376-377].

**B.     The ALJ's Decision**

To establish her entitlement to benefits, McNertney must have shown that she was unable to engage in any substantial gainful activity by reason of a medically determinable impairment or combination of impairments which could be expected to end in death or to last for a continuous period of not less than twelve months. *See* 42 U.S.C. § 423(d) (2006). For the purposes of the Act, McNertney was not under a "disability" unless her impairment was so severe that she was unable to do her previous work or–any other kind

4

of substantial gainful work which existed in the national economy. *Id.* The ALJ found that McNertney did not meet this burden at any time from February 25, 2006 to July 17, 2009, the date of the ALJ's decision.

The ALJ found that McNertney had some severe impairments: cervical and lumbar degenerative disc disease, schizoaffective disorder, post-traumatic stress disorder, personality disorder with borderline and paranoid characteristics, and a learning disability with low average intelligence. [Tr. 19]. *See* 20 C.F.R. 404.1520(c) and 416.920(c). The ALJ further found that McNertney

> has the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except, due to degenerative disc disease, she can lift and carry only 10 pounds frequently and 20 pounds occasionally, must work on an even surface protected from extreme vibration, cold, and humidity. Due to possible loss of mobility, she cannot perform commercial driving and cannot tolerate significant unprotected exposure to height or potentially dangerous moving machinery. Despite her psychological diagnoses and possible distraction by medical conditions and symptoms, she can perform simple, repetitive (1, 2, 3-step) tasks that do not require public contact, customer service, or proximity to or teamwork with other workers.

[Tr. 23]. Although the ALJ found that McNertney could not perform past relevant work, she did find that McNertney could perform jobs such as small products assembler and shelving clerk, which exist in "significant numbers" in the national economy. [Tr. 25-26].

McNertney raises several arguments on appeal. She asserts that the ALJ's decision is not supported by substantial evidence because the ALJ: 1) failed to properly consider the medical opinions of Floyd Simpson, D.O.; 2) failed to properly assess

5

McNertney's physical RFC; and 3) failed to find McNertney's testimony credible under established standards.

## II. Discussion

In reviewing the Commissioner's denial of benefits, this Court considers whether the ALJ's decision is supported by substantial evidence on the record as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). The Court will uphold the denial of benefits so long as the ALJ's decision falls within the available "zone of choice." *See Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). "An ALJ's decision is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." *Id.* (quoting *Nicola*, 480 F.3d at 886).

### A. Consideration of Dr. Simpson's Medical Opinions

McNertney argues that the ALJ failed to properly consider the opinions of Floyd Simpson, D.O. In her written decision, the ALJ stated: "Greater weight is given the opinion of for [sic] treating physician Simpson . . . . His opinion is consistent with his treatment notes and, indeed, with the notes of Dr. Brockman." [Tr. 22]. At the hearing, the vocational expert testified that an individual who was limited as indicated in Dr. Simpson's medical source statement of McNertney, would be precluded from any competitive work. [Tr. 55]. According to McNertney, the ALJ contradicts herself by, on the one hand, stating that she gave "greater weight" to Dr. Simpson's opinion, yet on the

other hand, disregarding the vocational expert's testimony that Dr. Simpson's opinion of McNertney's limitations would preclude her from any competitive work.

It is unclear to the Court how the ALJ considered the entirety of Dr. Simpson's opinions. Ostensibly, the ALJ assigned "greater weight" to Dr. Simpson's opinions, yet the ALJ's RFC finding fails to account for Dr. Simpson's findings of McNertney's "moderate" limitations–"impairment[s] which . . . preclude the individual's ability to perform the designated activity on a regular and sustained basis"–such as: "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," and "ability to maintain attention and concentration for extended periods (the approximately 2-hour segments between arrival and first break, lunch, second break, and departure)." [Tr. 414-416]. Additionally, Dr. Simpson repeatedly and consistently diagnosed McNertney with schizoaffective disorder and borderline personality disorder.

The ALJ points to nothing in the medical record to discount Dr. Simpson's medical source statement for McNertney, but rather clearly states that Dr. Simpson's opinions were assigned "greater weight." Yet when assigning an RFC to McNertney, it appears the ALJ failed to account for Dr. Simpson's noted limitations. Indeed, the RFC determined by the ALJ and the limitations indicated in Dr. Simpson's report do not align–the vocational expert testified that an individual with the RFC determined by the ALJ would be capable of competitive work, whereas an individual with the limitations indicated in Dr. Simpson's report would not be. While the testimony of the vocational

expert is not "substantial evidence" standing alone to void the ALJ's decision, the ALJ is required to explain her rationale for arriving at her conclusions. *See* 20 C.F.R. §§ 404.1520a, 404.1527.

The Court also notes that the ALJ appears to inadequately support her characterization that Dr. Sharol McGehee's opinions are based on questionable testing. In her decision, the ALJ stated:

> Further, [Dr. McGehee's] opinion is based on evidence that appears questionable. Dr. McGehee reported on July 6, 2007 that the claimant was "not malingering" but that the psychological testing was invalid due to "negative impression management". Dr. McGehee reported on February 3, 2009 that the psychological testing was again invalid, but was "corrected for validity". No other testing was performed, such as MMPI, TOMM, or other test of malingering notwithstanding Dr. McGehee's conclusion which was based on unreliable or questionable testing. These factors lead the undersigned to give substantially reduced weight to Dr. McGehee's opinion.

[Tr. 22]. Contrary to the ALJ's statement, Dr. McGehee's July 2007 report did not indicate that the psychological testing conducted on McNertney was invalid. Rather, Dr. McGehee stated: "Jill does not appear to be malingering, even though test results suggested that negative impression management was a possibility. With the diagnoses that she has, this type of test score would be considered appropriate." [Tr. 381]. Thus, the test score was not "invalid," but an "appropriate" reflection of McNertney's condition.

Additionally, the ALJ appears to discount Dr. McGehee's 2009 report because the doctor stated that "[t]he MCMI III was corrected for the sake of validity." [Tr. 376]. From this statement, the ALJ concluded that Dr. McGehee "reported . . . that the psychological testing was again invalid." [Tr. 22]. It is unclear to the Court how the ALJ

arrived at this conclusion. A validity scale is inherent in MCMI-III testing. Nothing in the medical records indicate that Dr. McGehee's test results were invalid. The ALJ may not substitute her own opinion for that of Dr. McGehee as to how to interpret McNertney's test results. *See Ness v. Sullivan*, 904 F.2d 432, 435 (8th Cir. 1990).

B. **Evaluation of McNertney's Physical RFC**

McNertney argues that the "ALJ's failure to address standing, walking, and sitting in her PRFC constitutes a critical error." [Doc. # 9, at 33]. While the Court notes that the ALJ's formal RFC findings did not include any reference to standing, walking, or sitting limitations, the ALJ included McNertney's disc disease as a severe impairment [Tr. 19], and also asked the vocational expert to identify jobs that McNertney could perform given that she could "[s]tand[] and walk[] up to six hours during the day . . . sit[] the remainder of an eight-hour day. . . . [and] need[ed] an even surface upon which to stand and walk." [Tr. 51]. Thus, the failure to include McNertney's standing, walking, and sitting limitations in the formal RFC findings is not fatal to the ALJ's decision. McNertney does not argue that the standing, walking, and sitting limitations presented to the vocational expert by the ALJ are not supported by substantial evidence.

C. **Evaluation of McNertney's Credibility**

As Dr. Simpson's report discusses McNertney's mental impairments, and as this case will be remanded to the ALJ for an appropriate consideration of Dr. Simpson's opinion, McNertney's mental impairments will consequently be reevaluated. As such, McNertney's credibility as to her mental impairments will need to be reassessed in light

of the ALJ's new findings. Because McNertney's credibility as to her mental impairments bear on her credibility as a whole, the credibility of McNertney's statements regarding both her mental and physical impairments must be reconsidered in light of the ALJ's new findings. Therefore, the Court refrains from addressing this issue.

## III. Conclusion

Accordingly, it is hereby ORDERED that this case is reversed and remanded to the ALJ for the purpose of reconsidering McNertney's RFC after reconsidering any limitations caused by McNertney's mental impairments. The ALJ will also have to reconsider those limitations in conjunction with the limitations she finds credible and present those limitations in a new hypothetical to the vocational expert.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: June 13, 2011  
Jefferson City, Missouri